**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————— X

P. STEPHEN LAMONT and P. STEPHEN
LAMONT II (a Minor)

Plaintiffs

v.                                                          **DOCKET NO: 14 CV 5052 (NSR)**


KRISTEN K. WILSON in her individual and             **REQUEST FOR CONFERENCE**
official capacity, TERRENCE E. MCCARTNEY
in his individual and official capacity, KIRSTEN A.
BUCCI in her individual and official capacity,
LAURA U. BRETT in her individual and
official capacity, JOSEPH A. SACK in his individual
and official capacity, JULIE P. KILLIAN in her
individual and official capacity, FRANK J.
CULROSS in his individual and official
capacity, SCOTT D. PICKUP in his official and
individual capacity, JIM BUONAIUTO in his
individual and  official capacity, ANGELA RUNCO
in her individual and official capacity, and CITY OF
RYE, JOHN DOES, and JANE DOES.

Defendants.

**JURY TRIAL DEMANDED**
————————————————————— X


**REQUEST FOR INFORMAL CONFERENCE PURSUANT TO LOCAL RULE 37.2 AND**
**INDIVIDUAL RULES OF PRACTICE IN CIVIL CASES 3.A.i.**


Plaintiffs, P. Stephen Lamont and P. Stephen Lamont II, respectfully move the Court by letter

motion, pursuant to Local Rule 37.2 of the United States District Court for the Southern District

of New York and this Court's Individual Rules of Practice in Civil Cases 3.A.i., to schedule an

informal conference with the Court for filing the motion attached herein as Exhibit "A" Motion

for Leave to file a 2nd Amended Complaint.

Pursuant to Fed. R. Civ. P. 37(a)(1), Plaintiffs contacted Defendants' Counsel, Darius Chafizadeh, Member of Harris Beach PLLC on August 27, 2014 who indicated "Let's address the issues before Judge Roman on the 17th."

For the reasons identified above, the Plaintiffs, P. Stephen Lamont and P. Stephen Lamont II, respectfully request that the Court schedule an informal conference regarding the filing of such motion - Plaintiffs' Motion for Leave to File a 2nd Amended Complaint. Plaintiff Lamont is expected to be in Los Angeles County, Cal. until October 8, 2014 where his letter to appear telephonically was filed on September 12, 2014 and requests that such letter is deemed sufficient for other conferences scheduled by the Court from even date below to October 8.

Dated: September 16, 2014

For Plaintiffs:

By:_____

P. Stephen Lamont, Pro Se
1095 Boston Post Road
Rye, New York 10580
Tel.: 914-217-0038
Email: p.stephen.lamont@gmail.com

EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— X

**P. STEPHEN LAMONT and P. STEPHEN LAMONT II (a Minor)**

Plaintiffs

v.                                              **DOCKET NO: 14 CV 5052 (NSR)**


**KRISTEN K. WILSON in her individual and official capacity, TERRENCE E. MCCARTNEY in his individual and official capacity, KIRSTEN A. BUCCI in her individual and official capacity, LAURA U. BRETT in her individual and official capacity, JOSEPH A. SACK in his individual and official capacity, JULIE P. KILLIAN in her individual and official capacity, FRANK J. CULROSS in his individual and official capacity, SCOTT D. PICKUP in his official and individual capacity, JIM BUONAIUTO in his individual and official capacity, ANGELA RUNCO in her individual and official capacity, and CITY OF RYE, JOHN DOES, and JANE DOES.**

Defendants.

**JURY TRIAL DEMANDED**

—————————————————————— X

## PLAINTIFFS' MOTION FOR LEAVE TO FILE A 2nd AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

### INTRODUCTION

Plaintiffs, P. Stephen Lamont and P. Stephen Lamont II, respectfully move the Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure, for leave to file a 2nd AMENDED COMPLAINT, a copy of which is attached hereto. The new complaint maintains the counts and allegations against the same defendants from the original complaint, but accounts for the significant factual and procedural developments that have occurred since the Amended

Complaint was filed including the (i) lies, deceits, and misrepresentation by Darius Chafizadeh ("Chafizadeh," a new federal defendant under claim of Tortuous Interference with Business Opportunities), Counsel for the federal defendants; and (ii) failure to supervise his egregious behavior by his employer, Harris Beach PLLC ("HB" a new federal defendant).

On August 25, 2014, Plaintiffs delivered a copy of the proposed 2nd Amended Complaint to the federal defendants. As of the time of filing, on August 27, 2014, Defendants had not consented to the filing. Accordingly, Plaintiffs seek the Court's leave to amend, which should be granted for the reasons set forth below.

## PROCEDURAL HISTORY

On July 7, 2014, Plaintiffs filed a Complaint and an Order to Show Cause for an Emergency Hearing. On July 16, 2014 the federal defendants opposed the Emergency Hearing. On July 21, 2014 Plaintiffs filed and properly served an Amended Complaint claiming violations of 42 U.S.C. 1983, the Fourteenth Amendment, and 18 U.S.C. 1961 et seq. and 18 U.S.C. 1964 (Civil RICO Remedies). On July 21, 2014, Plaintiffs filed a Motion to Strike the federal defendants July 16 opposition for failure to authenticate purported emails contained within. On July 24, the parties attended a hearing where directly after this Court denied the requested relief in: the Order to Show Cause citing Plaintiffs failure to meet the tests of a preliminary injunction and failing to agree that Plaintiffs were merely requesting an enjoinment; denied the Motion to Intervene by iviewit Holdings, Inc. failing to agree that the membership dues are, factually, the property of iviewit Holdings, Inc until a membership is activated whereby they transfer to Plaintiff Lamont; and denied a motion to strike the federal defendants July 16 opposition for failure to authenticate purported electronic mail messages citing Fed. R. Evid. 901(b)(l) (Plaintiffs file a Notice of Appeal on August 20, 2014 attached herein as Exhibit "A"). The Court also directed the

Plaintiffs to "preserve his computer hard drive and any other materials on his computer related to this case."

## STATEMENT OF FACTS

On July 25, 2014 after consulting with the members of his "to-be-nominated board" as they are identified at www.iviewitholdings.com/boardofdirectors Plaintiff sent an electronic mail message to Darius Chafizadeh, Counsel for the federal defendants ("Chafizadeh") outlining the direction he received to preserve all documents, but that the folder "Human Resources" and "Research and Development" will not be available for inspection. Plaintiff explained that the "Human Resources" folder contain the names and compensation information that iviewit Holdings, Inc. and Plaintiff Lamont possess for several individuals who will be invited to build out an in house IP legal department; Plaintiff Lamont would breach his confidentiality for such individuals by providing such information, even under seal.

Plaintiff went on to explain that the folder "Research and Development" will not be made available as it contains the specimens of patent applications that have been heralded as the most important inventions in the history of multimedia technology attached herein as Exhibit "B;" Plaintiff Lamont would breach his confidentiality for such information by providing such folder, even under seal. Lamont, as Chairman, drafted, transmitted, and executed the July 25 electronic mail message as is customary. As Chief Executive Officer of iviewit Holdings, Inc. (d.b.a. Arumai Holdings, Inc.), Lamont estimates that with perfect execution of the intellectual properties of Exhibit "B" that Arumai would be the sixth most valuable company in the United States by market capitalization as depicted by Exhibit "C" (no authentication necessary).

As has been customary in this litigation, the Enterprise (as they are defined in par. 21 of the Amended Complaint) and Chafizadeh, not supervised by HB, grasps at every straw to discredit

Plaintiff Lamont where on or about August 4, 2014, Chafizadeh, not supervised by HB, makes contact with David G. Schwartz, Vice President, Corporate Counsel of Frontier Communications, Inc. ("Schwartz") to verify that its Chairman & CEO, Maggie Wilderotter will stand for nomination as a Director of a newly incorporated Arumai Holdings, Inc. in the State of California. Chafizadeh takes the words of Schwartz without out even inquiring as to what prior discussions have taken place between Wilderotter and Plaintiff Lamont, without talking to the principal herself, and yet, employing his particular brand of wizardry, perilously files an Endorsed Letter to this Court now made as part of the public record as if he has "struck gold." However, Chafizadeh, has not "struck gold" where in an electronic mail message dated September 23, 2012, Wilderotter expresses her satisfaction with a proposal to stand for nomination by stating "How nice of you to think of me Steve," and "we can get together and discuss" authenticated and attached herein Exhibit "D." Contrary to the reckless assumptions of Chafizadeh, not supervised by HB and worthy of a Rule 11 Motion for Sanctions, in an electronic mail message dated August 2, 2014 Wilderotter advises Lamont that "I am also in the video delivery business I am precluded from participating in any businesses connected to video" where Wilderotter is counseled that she has a conflict of interest whereby Frontier changing its business model to being in the video delivery business overlaps Arumai's patent rights under various claims of U.S. Patent Nos. 09/587,730, 09/587,026, 09/587,734, 09/522,721, 09/630,939, authenticated and attached herein as Exhibit "E." The role of Wilderotter as an outside director of Arumai is to have very little conflict of interest and see the big picture differently than insiders not to infringe upon the Arumai's patent rights. Finally, contrary to the reckless assumptions of Chafizadeh, not supervised by HB and worthy of a Rule 11 Motion for Sanctions, in an electronic mail message dated August 2, 2014 Plaintiff Lamont and Wilderotter, realizing and

has realized the value of Arumai's patent portfolio to Frontier agree to revisit a business relationship in Q1 2015, authenticated and attached herein as Exhibit "F." From this narrative, it is clear that it is Schwartz's cease and desist demand, a full five rungs below the office of Chairman, not Wilderotter's. As such, Chafizadeh, not supervised by HB and worthy of a Rule 11 Motion for Sanctions, has not "struck gold," but has again put his foot in his mouth on behalf of the Enterprise, HB, and himself.

As for James E. Meyer, Chief Executive Officer of Sirius XM Radio, Inc. ("Meyer"), Chafizadeh, not supervised by HB and worthy of a Rule 11 Motion for Sanctions, takes the testimony of an unnamed "General Counsel" without talking to the principal himself or inquiring into past business relationships, thus failing to realize that Meyer, Plaintiff Lamont, and others from 1995 to 1999 brought one of the greatest brand names in the history of business from the brink of bankruptcy to an IPO oversubscribed three times over lead managed by Goldman Sachs Group, Inc., while Chafizadeh, purporting himself to be a Partner of a professional limited liability company not supervised by HB where no other attorney on the URL at www.harrisbeach.com terms himself or herself as a "Partner" but a "Member" to conform to the proper formation of HB. Chafizadeh "schleps" documents for clients and works for the billable hour when it is available, and is a "sock puppet" of Kevin Plunkett, former Corporation Counsel of the City of Rye and now Deputy Executive of Westchester County, as is federal defendant Wilson, where Plunkett has a direct, financial interest, in extorting Plaintiff Lamont, individually, and in his capacity as the Chairman of the Committee for Election Equality.

By Chafizadeh, not supervised by HB and worthy of a Rule 11 Motion for Sanctions, reckless Endorsed Letter gives Plaintiff Lamont's customers, competitors, and intellectual property adversaries the opportunity to use Chafizadeh's lies, deceits, and misrepresentations to, in

particular, impact an action pending in the United States Court of Appeals for the Ninth Circuit styled *P. Stephen Lamont, individually, and as Nominee for 100% of the Capital Shares of Iviewit Holdings, Inc., v. Time Warner Inc. and Warner Bros. Entertainment Inc.* (13-55263, USCA 9th Circuit, filed September 12, 2012) where Plaintiff Lamont stands to forfeit, between success bonuses and recovery of loans, Ten Million Dollars ($10,000,000). As has been customary in that litigation, the defendants' attorneys, Steptoe & Johnson, LLP, will have a field day with it.

## ARGUMENT

### PLAINTIFFS HAVE MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give[1] leave when justice so requires.[2] " The decision whether to grant leave to amend a pleading is within the sound discretion of the district court, but as the United States District Court for the Middle District of Georgia, Albany Division has aptly recognized, "this discretion is strictly circumscribed by the proviso that 'leave [should] be freely given when justice so requires.'"[34] Therefore, a justifying reason must be apparent for denial of a motion to amend.[5] "Unless a

---

[1] *FTC v. Phoebe Putney Health System, Inc.*, No. 11-1160, ___ U.S. ___, 2013 WL 598434 , at *12 (Feb. 19, 2013) (citing Knox v. Service Employees, 567 U.S. ___, ___ (2012) (slip op. at 7) and FTC v. Whole Foods Market, Inc., 548 F.3d 1028, 1033-34 (D.C. Cir. 2008) (Brown, J.))..

[2] As no scheduling order has been issued in this case, Federal Rule of Civil Procedure 16(b), which governs modifications to pretrial scheduling orders, is not applicable.

[3] *Florida Foundation Seed Producers, Inc. v. Georgia Farms Services, LLC*, No. 1:10-CV-125, 2012 WL 4840809, at *21 (M.D. Ga. Sept. 28, 2012) (Sands, J.) (citing *Nat'l. Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir. 1982)).

[4] *Id.* (quoting *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988)).

[5] *Id*. (citing *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993)). A court may consider such factors as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. Id. (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial[6].

In light of the significant factual and procedural developments since Plaintiffs filed suit in July 2014, good cause, and in light of the reckless behavior of Chafizadeh, not supervised by HB and worthy of a Rule 11 Motion for Sanctions, for the filing of a 2nd Amended Complaint is immediately apparent. Defendants, old and new, will in no way be prejudiced if the changes are allowed at this point in the proceedings. Furthermore, there is no apparent reason for denying the motion to amend, as none of the factors that may militate against it are present in this case. Consistent with the liberal standard that applies to motions to amend under Rule 15(a)(2), the Court should therefore grant Plaintiffs' motion.

None of the factors that may militate against granting a motion to amend is present in this case. Plaintiffs moved swiftly to file these papers once served with the August 25 Endorsed Letter. Thus, there is no undue delay in Plaintiffs' request to amend. The newly-alleged facts were entirely unknown – and, in fact, not in existence – at the time Plaintiffs filed the Amended Complaint Plaintiff are not seeking the amendment in bad faith or with a dilatory motive.

The interests of justice and judicial economy will undoubtedly be served by having all allegations properly before the Court as set forth in Plaintiffs' proposed 2nd Amended Complaint. The amendments are narrowly tailored to reflect the present circumstances and Plaintiffs' present understanding of the case. In so doing, the action can more effectively proceed on the merits. Defendants will not suffer any undue prejudice by virtue of the Court's allowance of the proposed amendment. The determination of whether prejudice would occur often includes assessing whether allowing an amendment would result in additional discovery, cost, and

---

[6] *Id.* (citing *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) (internal quotation marks omitted)).

preparation to defend against new facts or new theories. Defendants cannot be prejudiced, or caught off guard, by the new facts alleged by the Plaintiffs in the proposed amendment, since the Defendants, old and new, have first-hand knowledge of the roles that they played in the facts at issue.  On the other hand, the proposed amended complaint does involve the addition of new defendants, sets forth new claims, and raises new legal theories. However, no prejudice would result to Defendants in allowing the amendment under these circumstances.

Finally, Plaintiffs's request to file a 2nd Amended Complaint is not futile as Plaintiffs have alleged sufficient facts to state a claim for relief that is facially plausible. Where the proposed amendment is not clearly futile, denying leave to amend on this ground is highly improper.

Accordingly, in the interest of justice, this Court should grant Plaintiff's motion for leave to file the proposed 2nd Amended Complaint. The grant of this motion is particularly appropriate here, given the clear absence of any substantial reason to deny leave to amend.

## CONCLUSION

For the reasons identified above, the Plaintiffs, P. Stephen Lamont and P. Stephen Lamont II, respectfully request that the Court grant Plaintiffs' motion for leave to file the proposed 2nd Amended Complaint.

Dated: August 27, 2014

For Plaintiffs:

By:_____

P. Stephen Lamont, Pro Se
1095 Boston Post Road
Rye, New York 10580
Tel.: 914-217-0038
Email: p.stephen.lamont@gmail.com

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

P. Stephen Lamont and P. Stephen Lamont II (a Minor)
_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

14 ___ Civ. 5052 _____ ( NSR ) ( ___ )

- against -

Kristen. K. Wilson, et al.
_____

_____

_____

**NOTICE OF APPEAL
IN A CIVIL CASE**

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

Notice is hereby given that P. Stephen Lamont
_____
*(party)*

hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment

Docket Number 25 - Motion to Strike, in part
_____
*(describe the judgment)*

_____

_____

entered in this action on the 24 _____ day of July _____, 20 14 ____.
                              *(date)*              *(month)*        *(year)*

_____
*Signature*

1095 Boston Post Road
_____
*Address*

Rye, N.Y. 10580
_____
*City, State & Zip Code*

DATED: August 19 _____ ____, 20 14 ____

( 914 ) 217 - 0038
_____
*Telephone Number*

**NOTE:** To take an appeal, this form must be received by the *Pro Se* Office of the Southern District of New York within thirty (30) days of the date on which the judgment was entered, or sixty (60) days if the United States or an officer or agency of the United States is a party.

*Rev. 05/2007*

EXHIBIT "B"

| U.S. PATENT NO. | TITLE | INVENTORS |
|---|---|---|
| | | |
| 09/587,730 | System & Method for Providing an Enhanced Digital Video File | Schirajee, Rosario, Bernstein |
| 09/587,026 | System & Method for Playing a Digital Video File | Schirajee, Rosario, Bernstein |
| 09/587,734 | Apparatus & Method for Producing Enhanced Digital Images | Schirajee, Rosario, Bernstein |
| 09/522,721 | System & Method for Streaming an Enhanced Digital Video File | Schirajee, Rosario, Bernstein |
| TBA | Combination of '730 and '026 | Schirajee, Rosario, Bernstein |
| 09/630,939 | System & Method for Providing an Enhanced Digital Image File | Schirajee, Rosario, Bernstein |
| TBA | Combination of '730 and '939 | Schirajee, Rosario, Bernstein |
| TBA | System & Method for De-interlacing a Digital Video File | Lamont |
| TBA | System & Method for De-interlacing and Enhancing a Digital Video File | Lamont, Schirajee, Rosario, Bernstein |
| TBA | System & Method for De-interlacing, Enhancing, and Streaming a Digital Video File | Lamont, Schirajee, Rosario, Bernstein |
| TBA | System and Method for Intelligent Aspect Ratio Control | Lamont |
| TBA | System and Method for Intelligent Frame Rate Conversion and Inverse Telecine | Lamont |
| TBA | System & Method for | Lamont |

| | | |
|---|---|---|
| | **Intelligent Frame Rate Conversion , Inverse Telecine , and De-interlacing a Digital Video File** | |
| **TBA** | **System & Method for Intelligent Frame Rate Conversion , Inverse Telecine , and De-interlacing and Enhancing, a Digital Video File** | **Lamont** |
| **TBA** | **System & Method for Intelligent Decoding of Pixels and Macroblocks** | **Lamont** |

**EXHIBIT "C"**

# Installed Base June 2014 - The U.S. Most Valuable Companies

1 Apple Inc
$478,766.1

2 Exxon Mobil
$422,098.3

3 Microsoft
$340,216.8

4 Google
$313,003.9

5 Berkshire Hathaway
$308,090.6

6 **Arumai Holdings, Inc.**
**$307,000.9**

7 Johnson & Johnson
$277,826.2

8 Wells Fargo
$261,217.5

9 General Electric
$259,547.3

**EXHIBIT "D"**

How nice of you to think of me Steve. Once you get everything where you want it, we can get together and discuss.

Best,
Maggie

Maggie Wilderotter
Chairman and CEO
Frontier Communications
3 High Ridge Park
Stamford, CT 06905
maggie.wilderotter@ftr.com
203-614-5099
203-614-4627-Fax

I can help you!

EXHIBIT "E"

Hi Stephen. Unfortunately I don't have the capacity to take on anything new. Since I am also in the video delivery business I am precluded from participating in any businesses connected to video. I wish you the best of luck. Sincerely, Maggie

Maggie Wilderotter
Chairman and CEO
Frontier Communications
3 High Ridge Park
Stamford, CT 06905
maggie.wilderotter@ftr.com
203-614-5099
203-614-4627-Fax

I can help you!

**EXHIBIT "F"**

Absolutely Stephen. Paul White runs video for us. We should close CT in Q4 so contact him after the first of the year. Best, Maggie

Maggie Wilderotter
Chairman and CEO
Frontier Communications
3 High Ridge Park
Stamford, CT 06905
maggie.wilderotter@ftr.com
203-614-5099
203-614-4627-Fax

I can help you!

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— X

**P. STEPHEN LAMONT and P. STEPHEN**
**LAMONT II (a Minor)**

Plaintiffs

v.                                                    **DOCKET NO: 14 CV 5052 (NSR)**

                                                         **[PROPOSED] ORDER**

**KRISTEN K. WILSON, et al.**

Defendants.

**JURY TRIAL DEMANDED**

———————————————————————— X

Plaintiffs, P. Stephen Lamont and P. Stephen Lamont II filed a Motion for Leave to File a 2nd Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(2), and Memorandum of Law in Support thereof.

Whereas the Court has considered Plaintiffs' motion and memorandum, **THE COURT FINDS** those Plaintiffs have demonstrated that good cause exists and justice requires the grant of leave to file the proposed 2nd Amended Complaint.

Therefore, Plaintiffs' Motion is **GRANTED**.

**SO ORDERED**, this ___ day of _____ 2014

_____
The Honorable Nelson Stephen Roman
United States District Court Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— X

P. STEPHEN LAMONT and P. STEPHEN
LAMONT II (a Minor)

**Plaintiffs**

**v.**

KRISTEN K. WILSON in her individual and
official capacity, TERRENCE E. MCCARTNEY
in his individual and official capacity, KIRSTEN A.
BUCCI in her individual and official capacity,
LAURA U. BRETT in her individual and
official capacity, JOSEPH A. SACK in his individual
and official capacity, JULIE P. KILLIAN in her
individual and official capacity, FRANK J.
CULROSS in his individual and official
capacity, SCOTT D. PICKUP in his official and
individual capacity, JIM BUONAIUTO in his
individual and official capacity, ANGELA RUNCO
in her individual and official capacity, CITY OF
RYE, DARIUS CHAFIZADEH, and HARRIS
BEACH PLLC, JOHN DOES, and JANE DOES.

**Defendants.**

**JURY TRIAL DEMANDED**

——————————————————————— X

**DOCKET NO: 14 CV 5052 (NSR)**

**2nd AMENDED
COMPLAINT**

## COMPLAINT FOR VIOLATIONS OF 42 U.S.C. 1983, FOURTEENTH AMENDMENT, and 18 U.S.C. 1961 et seq. and 18 U.S.C. 1964 (Civil RICO Remedies), and SUPPLEMENTARY CLAIMS

## NATURE OF THE ACTION

1.      This is an action for compensatory and punitive damages, proximately the result of

conduct engaged in by Defendants while jointly acting in concert in their capacities, and under

the color of various statutes, ordinances, regulations, customs, usages, and the laws of various

States, in violations of Plaintiffs' rights as guaranteed by 42 U.S.C. 1983, the Fourteenth

Amendment, and 18 U.S.C. 1961 et seq. and 18 U.S.C. 1964 (Civil RICO Remedies), and Supplementary Claims.

## 2.     JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over the Defendants because all factual allegations derive from violations of 42 U.S.C. 1983, Fourteenth Amendment, 18 U.S.C. 1961 et seq. and 18 U.S.C. 1964 (Civil RICO Remedies) and for the sake of judicial expediency, this Court has supplemental jurisdiction over all other claims that are so related to claims in the actions of the parties within such original jurisdiction that they form part of the same dispute pursuant to 28 U.S.C. § 1367.

4.       This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question jurisdiction). Jurisdiction is premised upon Defendants' violation of 42 U.S.C. 1983, Fourteenth Amendment, and 18 U.S.C. 1961 et seq. and 18 U.S.C. 1964 (Civil RICO Remedies).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§1391 and 1400 because the bulk of Plaintiffs' business is transacted in Rye, N.Y., and for those Defendants that do not, and for the sake of judicial expediency, this Court has supplemental jurisdiction over all other Defendants that are so related to claims in the actions of the parties within such original jurisdiction that they form the Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

6.      Plaintiff, P. Stephen Lamont, is a ten (10) resident of Rye, New York residing at 1095 Boston Post Road (hereinafter "Lamont"), the Chairman of the Committee for Election Equality,

and a former member of Rye Golf Club (Pool for Two member from 2005 to 2007, comprehensive member from 2008 to 2010, and Family Pool member from 2011 to 2012);

7.      Plaintiff, P. Stephen Lamont II, is a twelve year old entering the 7th Grade at Rye Middle School and is the 2012 holder of the Bronze Medal in springboard diving in the Westchester County Swim Conference representing Rye Golf Club who resides with his father, Lamont (hereinafter "Lamont II");

8.      Defendant Kristen K. Wilson is the City Attorney in Rye, New York (hereinafter "Wilson");

9.      Defendant Terrence E. McCartney is an elected Councilman in Rye, New York (hereinafter "McCartney");

10.      Defendant Kirsten A. Bucci is an elected Councilwoman in Rye, New York (hereinafter "Bucci");

11.      Defendant Laura U. Brett is an elected Councilwoman and Deputy Mayor in Rye, New York (hereinafter "Brett");

12.      Defendant Joseph A. Sack is an elected Mayor in Rye, New York (hereinafter "Sack");

13.      Defendant Julie P. Killian is an elected Councilwoman in Rye, New York (hereinafter "Killian");

14.      Defendant Frank J. Culross is the City Manager in Rye, New York (hereinafter "Culross");

15.      Defendant Scott D. Pickup is the former City Manager recently demoted to Assistant City Manager in Rye, New York (hereinafter "Pickup");

16.      Defendant Jim Buonaiuto is the General Manager at the City of Rye Golf Club (hereinafter "Buonaiuto");

17.     Defendant Angela Runco is the Accountant at the City of Rye Golf Club (hereinafter "Runco"); and

18.     Defendant City of Rye is a charter city in which the governing system is defined by the city's own charter document rather than by state, provincial, regional or national laws (hereinafter "Rye");

19.     Defendant Darius Chafizadeh purports to be a "Partner" of Harris Beach PLLC, a professional limited liability company (hereinafter "Chafizadeh"); and

20.     Defendant Harris Beach PLLC is a law firm in New York State, founded in 1856 that has 200 lawyers and offices throughout New York state as well as Newark, New Jersey, and New Haven, Connecticut (hereinafter "HB").

## STATEMENT OF FACTS

21.     In December 2013 Lamont received a telephone call from Wilson, upon information and belief at the direction of Pickup, claiming that there were unpaid dues on his Rye Golf Club account in the amount of $1,450; Ms. Wilson knew this not to be true and McCartney and Bucci are the City Council's Liaison to Rye Golf Club nominated by and appointed by Sack, Bucci, Brett, Killian, McCartney, (collectively, the "City Council" and where including Wilson, Culross, Pickup, Buonaiuto, Runco, the "Enterprise") and the purported unpaid dues are maintained by Runco.

22.     In opposition, Lamont pointed out to Wilson that the application submitted on May 3, 2013 consisted of a Pool for Two Membership.  Wilson acknowledged such in a May 13, 2013 electronic mail message attached herein as Exhibit "A".  Such application was denied by the Rye Golf Cub Commission on or about May 15, 2013[1].  Moreover, in the absence of a General

---

[1] As further information of the egregious conduct of the Enterprise, in the membership year 2013 the Member's Handbook allowed a Pool for Two Membership for a "primary member and spouse or significant other."  Directing

Manager, Wilson oversaw this process in full, upon information and belief at the direction of Pickup, and it was maintained by Runco, a holder over from the prior General Manager.

23.     Insistently claiming the existence of purported unpaid dues, Lamont consistently asked Wilson to produce the City's evidence which should constitute an executed Membership Application for a Family Pool category.  In the past eight (8) months, Wilson DID NOT produce the evidence requested, nor has Runco, and Wilson HAS NOT initiated proceedings against Lamont which is not surprising, because such evidence does not exist.  Evidence of which is surreptitiously absent in Defendants' Opposition papers to an Emergency Hearing, where Wilson perilously pressed on.

24.     Notwithstanding Wilson's theatrics, on June 30, 2014, Lamont sent by electronic mail a Member Application for a Family Pool Membership for the 2014-2015 years.  The next day, Rye was provided with a Cashier's check drawn from the corporate account of iviewit Holdings, Inc. at Wells Fargo Bank N.A.; Lamont is the Chairman & Chief Executive Officer of iviewit Holdings, Inc.

25.      On Thursday, July 3, Lamont received an electronic mail message from Buonaiuto stating "we have an outstanding balance on your account from last year. At this point in time I ask that you discuss resolution of these issues with Kristen Wilson."

26.     Upon information and belief, Wilson caught wind of Lamont's application, was emboldened, and continued her particular brand of witchcraft, aided and abetted by Runco, in advising Buonaiuto to halt the processing of Lamont's application.

---

the Court's attention to the dictionary definition of "significant other," such definition invariably includes a family member; clearly, and since Lamont held such a Pool for Two membership from 2005 to 2007, Lamont was so disgusted that he decided to take the year off from Rye Golf Club.  Such definition of Pool for Two membership continues to be one of "primary member and spouse or significant other" as is seen in Exhibit 1 of the Enterprise's OWN OPPOSITION PAPERS.

27.     Upon information and belief, it is Brett and Killian who have given Wilson the "green light" to deny Lamont's civil rights and Sack is under the duty to supervise.

28.     In an electronic mail message of July 3, Lamont advised Culross, the defacto chief executive officer of Rye, of Wilson's politically extortive claims and demanded the activation of Lamont's fully paid membership by 10:00 A.M. on Sunday July 6.  Culross did not order the activation of the membership which led to the initiation of this action.

29.     Rye Golf Club is a City of Rye owned facility where, should you prove residency as Lamont did in each of the last ten (10) years and pay the membership fee as in the Cashier's check drawn from the corporate account of iviewit Holdings, Inc., the obligation is to admit all such persons.  These are the circumstances in the 2014 - 2015 membership years.

30.     On August 25, 2014, penned by the Enterprise's Counsel, Darius Chafizadeh of federal defendant Harris Beach ("Chafizadeh"), filed an Endorsed Letter to this Court which factually and intentionally incorrectly misstated the facts without the due diligence that such matters customarily take on that disparages and tortuously interferes with the business opportunities of Plaintiff Lamont and his employer iviewit Holdings, Inc. (d.b.a. as Arumai Holdings, Inc.) ("Arumai").

31.     Arumai is a multimedia technology company that holds the patent rights to: backbone, enabling technology for the encoding and transmission of digital video across all transmission networks and viewable on all display devices; stakes the claim as the inventors of streaming video; image overlay systems that stake the claim as the inventors of digital zoom and pan without pixelation on all video capture devices; a technology pertaining to the remote control of video devices; and various video processing technologies that enable digital image processing blocks such as video encoders or decoders for digital video system-on-chip (SoC) designs that

deliver optimum image quality; and intelligent 3G decoding of video formats for the next generation decoders.

# 42 U.S.C. 1983.

## Legal standard

32. 42 U.S.C. §1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

33. The elements of a §1983 claim are:

   a. a "person";

   b. acted under "color of law"; and

   c. deprived another person of a constitutional right.

34. A State is not a person under 42 U.S.C. §1983, but a City is a person under the law (*Will v. Michigan Department of State Police* 49 US 58 109 S. Ct. 2304 105 L. Ed 2d 45 [1989]).

35. State or City officials acting in their official capacities are not persons under 42 U.S.C. §1983, but State or City officials acting in their individual capacities are persons under the law.

36. Wilson, Culcross, Pickup, Buonaiuto, Runco, the City Council, and the City of Rye (the "Enterprise") are persons.

37. Wilson, Culcross, Pickup, Buonaiuto, Runco, the City Council, and the City of Rye (the "Enterprise") acted "under color of state law" when they failed to activate Lamont's membership.

38. Thus, Plaintiffs maintain that liability under §1983 has been established as:

a. Wilson, Culcross, Pickup, Buonaiuto, Runco, and the City Council (the "Enterprise") were on duty;

b. Wilson, Culcross, Pickup, Buonaiuto, Runco and the City Council (the "Enterprise") hold themselves out as municipal officials; and

c. Wilson, Culcross, Pickup, Buonaiuto, Runco, and the City Council (the "Enterprise") invoked the authority of their offices and in their individual capacities when they failed to activate Lamont's membership.

39.    When Wilson, Culcross, Pickup, Buonaiuto, Runco, and the City Council (the "Enterprise"), all State actors acting in their individual capacities, and on July 6, 2014 continued to block Lamont's membership they do so in flagrant violation of 42 U.S.C 1983.

## Fourteenth Amendment

### Legal standard

40.    Section 1 of the Fourteenth Amendment provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

41.    It has been established that Wilson, Culcross, Pickup, Buonaiuto, Runco, the City Council, and the City of Rye (the "Enterprise") are persons.

42.    When Wilson, Culcross, Pickup, Buonaiuto, Runco, and the City Council (the "Enterprise"), all State actors acting in their individual capacities, and on July 6, 2014 continued to block Lamont's membership they do so in flagrant violation of the Fourteenth Amendment.

43.     The de jure/de facto distinction is well established in school district cases, due process and equal protection of laws, as it should be synonymously in municipal facility cases, and is firmly grounded upon the "state action" language of the Fourteenth Amendment.

## 18 U.S.C. 1961 et seq., and 18 U.S.C. 1964 (Civil RICO Remedies)

**Legal Standard**

44.     Title IX of the Organized Crime Control Act of 1970 ("OCCA"), employs a three pronged attack to break the power of the Enterprise: a criminal cause of action, a government civil cause of action, and a <u>private cause of action</u>. This Amended Complaint focuses on RICO's private cause of action.

45.     While many of the elements of this civil cause of action mirror those of the criminal cause of action, civil RICO imposes a lower burden of proof: A civil RICO plaintiff must prove all elements of the claim by <u>only a preponderance of the evidence.</u>

46.     In *Sedima, S.P.R.L. v. Imrex Co.,* the Supreme Court, interpreting section 1962(c) of the statute, the Court held that a "pattern of racketeering activity" requires at least two acts. More significantly, the "predicate acts" must show continuity and be related to each other. The Court also stated that the acts must be coupled with the threat that this activity will continue over time.

**Predicate Acts**

47.     When Wilson allegedly first manufactured her politically extortive theory of Lamont's unpaid dues, upon information and belief at the direction of Pickup, in December 2013, she did so by telephone in violation of 18 U.S. Code § 1961 section 1343 ("The First Predicate Act" relating to wire fraud).

48.     When, upon information and belief, Wilson caught wind of Lamont's application, was emboldened, and continued her particular brand of witchcraft, aided and abetted by Runco, in advising Buonaiuto to halt the processing of Lamont's application, she did so by either telephone or electronic mail in violation of 18 U.S. Code § 1961 section 1343 ("The Second Predicate Act" relating to wire fraud).

49.     When Culross conspired with Wilson and the City Council to fail to activate Lamont's full paid membership they did so in violation of 18 U.S. Code § 1961, section 1951 ("The Third Predicate Act" relating to interference with commerce, Plaintiff Lamont's membership application).

50.     When Culross conspired with Wilson and the City Council to fail to activate Lamont's full paid membership they did so in violation of 18 U.S. Code § 1961 section 1951 ("The Fourth Predicate Act" relating to extortion, forcing Plaintiff Lamont to "double pay" to activate his family's membership).

51.     When Culross conspired with Wilson and the City Council to fail to activate Lamont's full paid membership they did so in violation of 18 U.S. Code § 1961, section 1952 ("The Fifth Predicate Act" relating to racketeering).

**Continuity and Relation**

52.     When the Enterprise failed to activate Lamont's full paid membership they did so in concert, continuously during the period of December 2013 to June 6, 2014.  The continuity of their violations is related – unpaid member dues and blocking the fully paid membership of Lamont in the 2014 to 2015 membership years.

**Activity Will Continue Over Time.**

53.     This present administration and past Rye administrations are legendary in their rights violations where they: (i) failed to provide a stop sign, allegedly engineered by Pickup,  at a requested location to a one Jim Amico of 16 Wappanocca Avenue in Rye where subsequently Amico's son was hit by a car and killed; (ii) another resident, a one Edward "Ted" Carroll of 945 Forest Avenue in Rye,  built a house for the comfort of his wife and son only to be arbitrarily assessed twice the normal rate; (iii) another resident, Amico again, was punched in the face by a member of the Rye police department who got away with it; (iv) another resident, a 25 year police officer in Rye and former PBA President Timothy Chittenden of 2 Hammond Road in Rye, was issued  ten (10) traffic violations but was never served with them where a politically motivated police officer allegedly perjured herself and eight (8) citations were upheld; (v) a one Raymond Tartaglione of 10 Hen Island in Rye is forced to live in fear of his environmentally insecure life on Hen Island because Rye will not abide by its own code, allegedly at the direction of Pickup; (vi)  a one Anne McCarthy of 24 Central Avenue in Rye, watched as public parkland was absconded with and turned into a parking lot, allegedly engineered by Pickup as a favor to a special interest group, a one attorney,  Jonathan Kraut; and  (vii) another resident, a one Leon Sculti of 10 Bulkley Manor in Rye, filed a proper FOIL request only to get stonewalled time and again where <u>federal defendant Wilson attempted to play the role of the FOIL intake officer and FOIL appeals officer simultaneously knowingly and willfully inapposite to NEW YORK STATE LAW</u>, allegedly at the direction of Pickup. Sculti is now a Rye Golf Club Commissioner where it becomes ever so clear that these Defendants hold nothing sacred.

**Standing and Timeliness.**

54.     Plaintiff Lamont as Chairman of the Committee for Election Equality, a duly formed Committee in the State of New York, County of Westchester, designed as the keeper of all that is

righteous in Rye, New York and, as such, Lamont has a direct interest in the elements of par. 53 above. As such, where Lamont proceeds individually, as Chairman of the Committee for Election Equality, he has standing under the "Activity Will Continue Over Time" requirement of *Sedima, S.P.R.L.* As Plaintiffs have proceeded within the four (4) year statute of limitations of civil RICO, their claims are timely.

**TORTUOUS INTERFERENCE WITH BUSINESS OPPORTUNITIES.**

**Legal Standard**

55. The specific elements required to prove a claim of tortuous interference typically include the following:

    a. The existence of a contractual relationship or beneficial business relationship between two parties;

    b. Knowledge of that relationship by a third party;

    c. Intent of the third party, to induce a party, to the relationship to impact the relationship;

    d. Lack of any privilege on the part of the third party to induce such a breach;

    e. The contractual relationship is impacted; and

    f. Damage to the party against whom the breach occurs.

56. Tortuous interference occurred when:

    a. The existence of a beneficial relationship between two parties, federal defendant Chafizadeh, unsupervised by federal defendant HB, and by virtue of his August 25 Endorsed Letter, afforded 9th Circuit defendants Time Warner Inc. and Warner Bros Entertainment Inc. the opportunity to impact litigation with Plaintiff Lamont, and where

the federal defendant Chafizadeh and federal defendant HB disrupted the ability of Plaintiff Lamont and Arumai to perform their obligations under such litigation styled as *P. Stephen Lamont, individually, and as Nominee for 100% of the Capital Shares of iviewit Holdings, Inc. v. Time Warner Inc. and Warner Bros Entertainment Inc.* (12-cv-08030, U.S.D.C. CDC, filed September 18, 2012, 13-55263 U.S. Court of Appeals for the Ninth Circuit) (the "9th Circuit Litigation") thereby preventing Plaintiff Lamont from receiving the performance promised;

b.      Federal defendant Chafizadeh and federal defendant HB had knowledge of that relationship when they surfed www.arumaiholdings.com and were documented by Google Analytics for ten appearances on multiple page views;

c.      By the August 25 Endorsed Letter, federal defendant Chafizadeh and federal defendant HB intended the opportunity for Time Warner and Warner Bros to impact the relationship;

d.      Federal defendant Chafizadeh and federal defendant HB lack any privilege to impact such relationship;

e.      Federal defendant Chafizadeh and federal defendant HB tortuously interfere when these federal defendants intentionally damage the Plaintiffs' business relationships in the 9th Circuit Litigation. This tort is one specific to business relationships and activities (irrespective of whether they involve a contract), the 9th Circuit Litigation; and

f.      Plaintiff Lamont is preparing for Mediation under the supervision of the 9th Circuit in the amount of $40,000,000 plus a going forward license of $10,000,000 per annum plus residuals on box office receipts, DVD disc purchases, video on demand purchases, streaming video licenses, and network programming licenses. Lamont's

potential by an Employment Agreement dated December 3, 2001, as amended is $10,000,000 between success bonuses and loan recoveries, and will be impacted by federal defendant Chafizadeh's, unsupervised by federal defendant HB's, tortuous interference.

## Fraud on the District Court.

### Legal Standard

57.     In the 1st Circuit, the 3rd Circuit, the 6th Circuit, and 10th Circuit, it has been held that the requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense" (*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989).

1. **Defendants' Memorandum of Law in Opposition, Affidavit of James Buonaiuto in Opposition, and Declaration of Kristen K. Wilson in Opposition to Order to Show Cause**

58.     On July 16, 2014, Defendants filed a Memorandum of Law in Opposition, Affidavit of James Buonaiuto in Opposition, and Declaration of Kristen K. Wilson in Opposition to Order to Show Cause.

59.     Within those pleadings were numerous electronic mail messages purportedly to and from Plaintiffs.

60.     Plaintiffs maintain that Defendants' Counsel Harris Beach PLLC received such electronic mail messages from the Defendants.

61.     Plaintiffs maintain that Defendants had full knowledge that such purported email did not have the benefit of "email headers."

62.     Plaintiffs maintain that Defendants' counsel Harris Beach PLLC had full knowledge that the electronic mail messages did not have the benefit of "email headers" yet perilously pressed on and made them part of the July 16 pleadings.

63.     From www.whatismyipaddress.com/email-headers, "email headers" are commonly described as follows

> In an e-mail, the body (content text) is always preceded by header lines that identify particular routing information of the message, including the sender, recipient, date and subject. Headers include the sending time stamps and the receiving time stamps of all mail transfer agents that have received and sent the message. In other words, any time a message is transferred from one user to another (i.e. when it is sent or forwarded), the message is date/time stamped by a mail transfer agent (MTA) - a computer program or software agent that facilitates the transfer of email message from one computer to another. This date/time stamp, like FROM, TO, and SUBJECT, becomes one of the many headers that precede the body of an email [to ensure the veracity of the email] (emphasis supplied).

64.     Plaintiff further maintains that without the benefit of email headers, attached herein as Exhibit "B," in the July 16 pleadings, Defendants and/or Defendants' counsel could employ a high school student to pull up a word processing document and write anything they chose to diminish Plaintiffs' claims.

65.     Respectfully, in even on instance alone where Defendants put forth an email without an email header, Defendants and its counsel sentiently set in motion an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the Plaintiffs claim, where this Court should immediately grant the requested relief in light of such conduct as the 1st Circuit, 3rd Circuit, 6th Circuit, and 10th Circuit have ruled as such.

**CONCLUSION**

66.     As is clear from Enterprise's July 16 pleadings and its Endorsed Letter of August 25, this case is no longer about the existence of unpaid dues, but that the Enterprise is grasping at every available straw, and disparaging and interferring with Arumai's business relationships, to deny Plaintiffs' rights.  From the false allegation of unpaid dues: to "Lamont watches porn on his laptop" a bald statement and an outright falsehood that does not even attempt to answer the who, what, where, when and how of such allegation; to "Lamont was escorted out of the facility for misbehavior" a bald statement and an outright falsehood that does not even attempt to answer the who, what, where, when and how of such allegation (was the child (children) he was supervising removed too); to now from a 13 year CEO who works 7 days a week, 100 hours a week, a 10 ½ year widowed father of a young child "Wilson fears for her safety," where the only thing Wilson has to fear is the termination of her contract between now and the end of these proceedings including appeals for her unlawful behavior; and, viewing this pattern, Lamont can expect an allegation of sexually harassing Angela Runco in the Enterprise's Motion to Dismiss!

67.     The business of Rye City government is not about the business of serving Rye residents, but is the business of abusing their rights as outline in par. 53, it has been going on for twenty years, and it is time to put this egregious conduct to rest. When it comes to the rights of Rye residents, Wilson, Culross, Pickup, Buonaiuto, Runco, the City Council, and the City of Rye are unrepentant, recidivists who, without hesitation, perpetrate frauds on the District Court, which this Court must finally stop.

**COUNT ONE**
**42 U.S.C 1983**
**(Defendants Wilson, Culcross, Pickup, Buonaiuto, Runco, the City Council, and the City of Rye)**

68.     Plaintiff repeats and realleges each and every allegation contained in paragraph "21" through "67" as though fully set forth herein.

69.     As a result of the Defendants' acts, Plaintiff now suffers and will continue to suffer injury and monetary damages, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of Two Hundred and Fifty Thousand Dollars ($250,000) as well as punitive damages, costs, and attorney's fees.

**COUNT TWO**
**FOURTEENTH AMENDMENT**
**(Defendants Wilson, Culcross, Pickup, Buonaiuto, Runco, the City Council, and the City of Rye)**

70.     Plaintiff repeats and realleges each and every allegation contained in paragraph "21" through "67" as though fully set forth herein.

71.     As a result of the Defendants' acts, Plaintiff now suffers and will continue to suffer injury and monetary damages, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of Two Hundred and Fifty Thousand Dollars ($250,000) as well as punitive damages, costs, and attorney's fees.

**COUNT THREE**
**18 U.S.C. 1961 ET SEQ. AND 18 U.S.C. 1964 (CIVIL RICO REMEDIES)**
**(Defendants Wilson, Culcross, Pickup, Buonaiuto, Runco, and the City Council)**

72.     Plaintiff repeats and realleges each and every allegation contained in paragraph "21" through "67" as though fully set forth herein.

73.     As a result of the Defendants' acts, Plaintiff now suffers and will continue to suffer injury and monetary damages, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of Two Hundred and Fifty Thousand Dollars ($250,000) as well as punitive damages, costs, and attorney's fees.

**COUNT FOUR**

## TORTUOUS INTERFERENCE WITH BUSINESS OPPPORTUNITIES
### (Defendants Chafizadeh and Harris Beach)

74.     Plaintiff repeats and realleges each and every allegation contained in paragraph "21" through "67" as though fully set forth herein.

75.     As a result of the Defendants' acts, Plaintiff now suffers and will continue to suffer injury and monetary damages, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of Ten Million Dollars ($10,000,000) as well as punitive damages, costs, and attorney's fees.

**WHEREFORE** a judgment is respectfully demanded:

a.     Awarding against each of the individually named Defendants such compensatory damages as the jury may determine, but not less than Two Hundred and Fifty Thousand Dollars ($250,000);

b.     Awarding against each of the individually named Defendants such punitive damages as the jury may impose, but not less than Two Hundred and Fifty Thousand Dollars ($250,000);

c.     Awarding against each of Chafizadeh and Harris Beach such compensatory damages as the jury may determine, but not less than Ten Million Dollars ($10,000,000);

d.     Awarding against each of Chafizadeh and Harris Beach such punitive damages as the jury may impose, but not less than Ten Million Dollars ($10,000,000);

e.     Determining there are no unpaid dues on Lamont's account at Rye Golf Club;

f.     Activating Lamont's Membership at Rye Golf Club;

g.     Permanently enjoining Defendants from interfering with Plaintiffs' civil rights;

h. Permanently enjoining Defendants from interfering with rights to due process and equal protection of the laws;

i. Determining that the Defendants are in fact a racketeering enterprise within the meaning of the statute, entitling Plaintiffs to treble damages;

j. Permanently enjoining Defendants Chafizadeh and Harris Beach from tortuously interfering in the business opportunities of Plaintiff Lamont.

k. Permanently enjoining Defendants and its counsel from perpetrating fraud on the District Court;

l. Awarding reasonable attorney's fees and costs; and,

m. Granting such other and further relief as to the Court seems just and proper.

**JURY TRIAL IS DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 15, 2014

For Plaintiffs:

By:_____

P. Stephen Lamont, Pro Se
1095 Boston Post Road
Rye, New York 10580
Tel.: 914-217-0038
Email: p.stephen.lamont@gmail.com

**EXHIBIT "A"**

Delivered-To: psl@iviewitholdings.com
Received: by 10.52.0.66 with SMTP id 2csp14370vdc;
Mon, 13 May 2013 08:30:33 -0700 (PDT)
X-Received: by 10.229.76.80 with SMTP id b16mr877427qck.19.1368459032522;
Mon, 13 May 2013 08:30:32 -0700 (PDT)
Return-Path: KWilson@harrisbeach.com
Received: from ironport.harrisbeach.com (ironport.harrisbeach.com. [64.80.116.155])
by mx.google.com with ESMTP id w3si10115861qer.18.2013.05.13.08.30.32
for <psl@iviewitholdings.com>;
Mon, 13 May 2013 08:30:32 -0700 (PDT)
Received-SPF: pass (google.com: domain of KWilson@harrisbeach.com designates
64.80.116.155 as permitted sender) client-ip=64.80.116.155;
Authentication-Results: mx.google.com;
spf=pass (google.com: domain of KWilson@harrisbeach.com designates 64.80.116.155 as
permitted sender) smtp.mail=KWilson@harrisbeach.com
X-IronPort-AV: E=Sophos;i="4.87,662,1363147200";
d="scan'208,217";a="6425948"
Received: from exchange2.harrisbeach.com (HELO ROCMAILCLUSTER.HarrisBeach.com)
([192.168.2.4])
by mail.harrisbeach.com with ESMTP; 13 May 2013 11:30:21 -0400
Received: from ROCHUB1.HarrisBeach.com ([192.168.2.93]) by
ROCMAILCLUSTER.HarrisBeach.com with Microsoft SMTPSVC(6.0.3790.4675);
Mon, 13 May 2013 11:30:18 -0400
Received: from NYCMB2.HarrisBeach.com ([fe80::48f3:d400:20d1:8125]) by
RocHub1.HarrisBeach.com ([fe80::d1fc:6326:dae8:7a98%11]) with mapi id
14.02.0342.003; Mon, 13 May 2013 11:30:18 -0400
From: "Kristen K. Wilson" KWilson@HarrisBeach.com
To: "'psl@iviewitholdings.com'" psl@iviewitholdings.com
CC: 'John Duffy' <ryemelco@yahoo.com>, "spickup@ryeny.gov"
<spickup@ryeny.gov>Subject: Pool for Two membershipThread-Topic: Pool for Two
membership
Thread-Index: Ac5P7caUhLfC9X8dSmqAhoEe/nDyEg==
Date: Mon, 13 May 2013 15:30:18 +0000
Message-ID:
98690E25FC3B2249AFE4DFEABDA7F1082936154D@NYCMB2.HarrisBeach.com
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
x-originating-ip: [192.168.4.129]
Content-Type: multipart/alternative;
boundary="_000_98690E25FC3B2249AFE4DFEABDA7F1082936154DNYCMB2HarrisBea_"
MIME-Version: 1.0
Return-Path: KWilson@HarrisBeach.comX-OriginalArrivalTime: 13 May 2013 15:30:18.0887
(UTC) FILETIME=[C6593970:01CE4FEE]

Mr. Lamont,

Please note that the RGC will be addressing your membership category on Wednesday night.  Once that issue is addressed, your concerns regarding reimbursement, etc. can be addressed.  The employment of Rye City employees is not an issue for the RGC to address publicly this Wednesday. We have received your emails and are aware of your concerns.

Thank you,
Kristen


**Kristen K. Wilson**
**Attorney**
HARRIS BEACH