```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:                               │
│ DATE FILED: 8/20/2015                │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

P. STEPHEN LAMONT, individually AND ON
BEHALF OF THE COMMITTEE FOR ELECTION
EQUALITY, and his minor son, P.S.L II,[1]

                                Plaintiff,

        -against-

KRISTEN K. WILSON in her individual and
official capacity, TERRENCE E. McCARTNEY in
his individual and official capacity, KIRSTEN A.
BUCCI[2] in her individual and official capacity,
LAURA U. BRETT in her individual and official
capacity, JOSEPH A. SACK in his individual and
official capacity, JULIE P. KILLIAN in her
individual and official capacity, FRANK J.
CULCROSS[3] in his individual and official capacity,
SCOTT D. PICKUP in his official and individual
capacity, JIM BUONAIUTO in his individual and
official capacity, ANGELA RUNCO in her
individual and official capacity, CITY OF RYE,
JOHN DOES, and JANE DOES,

                                Defendants.

---

14-cv-5052 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff P. Stephen Lamont ("Plaintiff") brings this action *pro se* on behalf of himself,

the Committee for Election Equality,[4] and his minor son[5] alleging violations of 42 U.S.C.

---

[1] Unless the Court orders otherwise, Federal Rule of Civil Procedure 5.2 requires that the parties refrain from using the full name of any individual known to be a minor in documents filed with the Court. To the extent that either party references Plaintiff's minor son in any future filing, please do so only using the minor's initials.

[2] Defendant Bucci's name is misspelled in the caption of the Amended Complaint. Defendant's first name is properly spelled "Kirstin." (Def.'s Mot. at 1 n.1.)

[3] Defendant Culcross' name is misspelled in the caption of the Amended Complaint. Defendant's last name is properly spelled "Culross." (Def.'s Mot. at 1.)

[4] Plaintiff has voluntarily withdrawn the Committee for Election Equality as a plaintiff in this action. (*See* Docket Minute Entry for July 23, 2014.)

[5] Plaintiff's minor son has not appeared by counsel in this matter. It is well-settled that a non-attorney parent may not bring an action *pro se* on behalf of his or her minor child. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing

§ 1983, the Fourteenth Amendment, and the Racketeer Influenced Corrupt Organizations Act

("RICO") resulting from the denial of his membership application to the Rye Golf Club.  Before

the Court is Defendants' motion to dismiss.  For the following reasons, Defendants' motion is

GRANTED.

## BACKGROUND

The following facts are gleaned from the Amended Complaint ("AC") unless otherwise

noted and are accepted as true for purposes of this motion.

Plaintiff is a ten-year resident of Rye, New York, and a former member of the Rye Golf

Club (the "RGC"), where he held various categories of membership between 2005 and 2012.

(AC ¶ 7.)  The RGC is owned by the City of Rye.  (AC ¶ 29.)

On May 3, 2013, Plaintiff submitted an application for a "Pool for Two" membership at

the RGC.  (AC ¶ 22.)  Plaintiff's application was purportedly denied on or about May 15, 2013.

(*Id.*)  Although not entirely clear from the Amended Complaint, Plaintiff appears to imply that

the denial of his application was based on Defendants deciding that he should have applied for a

"Family Pool" membership rather than a "Pool for Two" membership, which was limited to a

"primary member and spouse or significant other."  (*Id.* ¶¶ 22-23, ¶ 22 n.1.)  In December 2013,

Plaintiff received a telephone call from Defendant Kristen Wilson claiming that there were

unpaid dues on his RGC account in the amount of $1,450.  (*Id.* ¶ 21.)  Plaintiff alleges that

Wilson actually knew there were no unpaid dues on his account at the time she placed the

telephone call.  (*Id.*)  Plaintiff then "consistently" requested evidence of the unpaid dues and of

---

an action on behalf of his or her child.")  Plaintiff has removed his minor son's name from the caption of his
memorandum in opposition to the instant motion, which the Court construes as a voluntary withdrawal of all claims
brought on his son's behalf.  In any event, these claims would have been dismissed for failure to appear by counsel.

an executed "Family Pool" membership application, but never received such evidence.  (*Id.* ¶ 23.)

On June 30, 2014, Plaintiff sent the RGC an application for a "Family Pool" membership for the 2014-2015 season.  (*Id.* ¶ 24.)  The next day, Plaintiff sent the RGC a cashier's check drawn from the corporate account of iviewit Holdings, Inc., of which Plaintiff is the Chairman and Chief Executive Officer.  (*Id.*)  On July 3, 2014, Plaintiff received an email from Defendant Jim Buonaiuto advising him that there was an outstanding balance on Plaintiff's account from the previous year and that Plaintiff should discuss a resolution of the balance with Wilson.  (*Id.* ¶ 25.)  Plaintiff alleges that Wilson and the other defendants conspired to deny his application.  (*Id.* ¶¶ 26-27.)

After receiving Buonaiuto's email, Plaintiff emailed Defendant Frank Culross and demanded activation of his membership by July 6, 2014 at 10 a.m.  (*Id.* ¶ 28.)  Culross did not activate Plaintiff's membership and Plaintiff commenced the instant action.  (*Id.*)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In applying this standard, a

court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

      "*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12 Cv. 6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013) (internal citations omitted).  The court should read *pro se* complaints "'to raise the strongest arguments that they suggest.'" *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").  "However, even pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise 'a right to relief above the speculative level.'" *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotations omitted).

      Under Federal Rule of Civil Procedure 12(d), when "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss "must be treated as one for summary judgment," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  The rule does not require, however, that the court convert a motion to dismiss to a motion for summary judgment in every instance.  Rather, the rule:

      gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide

4

the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *see Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Thus, conversion is not required if the court explicitly disregards the outside materials submitted by the parties. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006) (matters outside pleadings presented to court were "excluded" within meaning of Rule 12(d) by district court's explicit refusal to consider outside materials); *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999) ("Attachment of an affidavit or exhibit to a Rule 12(b)(6) motion, however, does not without more establish that conversion is required."); *Islip U-Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296, 302 (N.D.N.Y. 2014) ("[C]onversion is not required if the court disregards the extrinsic material.").

Plaintiff attaches a number of exhibits to his memorandum in opposition to the instant motion, the majority of which have nothing to do with Plaintiff's claims concerning his application for membership in the RGC. Plaintiff cites to these exhibits in an attempt to allege purportedly unlawful acts carried out by some of the defendants to this action, as well as other members of the Rye government and community. Plaintiff may not, however, "amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." *K.D. ex rel Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (collecting cases); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Deylii v. Novartis Pharms. Corp.*, No. 12 Cv. 06669 (NSR), 2014 WL 2757470, at *8 (S.D.N.Y. June 16, 2014) ("It is well-settled that a party may not amend its complaint through statements in motion papers."); *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.") The Court therefore excludes these additional

5

materials and will decide the motion to dismiss solely on the basis of the allegations contained in the Amended Complaint.

## DISCUSSION

I.      **Section 1983 Claims**

Construing the Amended Complaint liberally, Plaintiff alleges that Defendants violated his rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment, giving rise to liability under 42 U.S.C. § 1983.  The Court addresses each of Plaintiff's allegations in turn.

    A.      *Equal Protection*

Plaintiff's first theory of liability under § 1983 is premised on the Defendants' alleged violation of Plaintiff's right to be provided equal protection under the law.  (Pl.'s Opp. ¶¶ 45-48.) Plaintiff alleges that Defendants blocked his membership "in flagrant violation of the Fourteenth Amendment[,]" (AC ¶ 40), and compares this action to the "school district cases," including seminal Supreme Court decisions *Sweatt v. Painter*, 339 U.S. 629 (1950) and *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483 (1954).  (AC ¶ 41; Pl.'s Opp. ¶¶ 45-46.) Plaintiff argues that "nearly all legislation classifies on the basis of some criteria, bestowing benefits or imposing burdens on one group and denying them to another – [which is] the precise set of facts in the instant action."  (*Id*. ¶ 47.)  Plaintiff provides no other arguments in support of this theory, other than that "[a]ny student, practitioner, or judge conversant in the 'school district cases' knows that [this] claim is one of the Equal Protection clause that requires each state to provide equal protection under the law."  (*Id.* ¶ 46.)

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal citations and quotation marks omitted).  A plaintiff may plead intentional discrimination in

violation of the Equal Protection Clause in a number of ways, including pointing to a specific

law or policy that expressly or in practice discriminates on the basis of some impermissible

consideration such as race, *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (quoting *Brown v.*

*City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999)), or by basing its allegations on theories of

selective enforcement or a "class-of-one." *See Witt v. Vill. of Mamaroneck*, No. 12 Cv. 8778

(ER), 2015 WL 1427206, at *4 (S.D.N.Y. Mar. 27, 2015). Plaintiff has not identified any

specific law or policy that he is challenging, so the Court assumes Plaintiff is proceeding on a

selective enforcement or "class-of-one" theory.

To succeed on a theory of selective enforcement, a plaintiff must prove that: "(1) the

[plaintiff], compared with others similarly situated, was selectively treated; and (2) that such

selective treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). Similarly, to succeed on a

"class-of-one" theory, a plaintiff must prove: "(1) intentional disparate treatment, (2) from other

similarly situated individuals, (3) without a rational basis for the difference in treatment, and (4)

without otherwise claiming membership in a particular class or group." *Witt*, 2015 WL 1427206

at *4 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Regardless of which theory Plaintiff intended to proceed under, Plaintiff's "clear[]

analog[y]" between his claim and the "school district cases" leads this Court to believe that

Plaintiff is alleging discrimination based on his race, though Plaintiff's analogy is not nearly as

clear as he believes it to be. (Pl.'s Opp. ¶ 45.)[6] The Amended Complaint, however, contains

---

[6] All but one of the cases cited by Plaintiff relate to racial segregation in schools. The remaining case to
which Plaintiff cites, *Commonwealth of Virginia v. Rives*, 100 U.S. 313 (1879), dealt with whether having an all-
white jury violated the Equal Protection Clause of the Fourteenth Amendment.

absolutely no allegations that Plaintiff was selectively or disparately treated based on his race. Even if Plaintiff was alleging discrimination on some other ground – for instance, his religion or Defendants' intent to inhibit or punish the exercise of his constitutional rights, both of which are absent from the Amended Complaint – Plaintiff has not alleged that similarly situated individuals were being treated differently than himself.  Plaintiff's failure to allege the basis for his purported discrimination, as well any potential comparators, is fatal to his equal protection claim.

      B.      *Due Process*

The Due Process Clause of the Fourteenth Amendment requires that no "state . . . deprive any person of life, liberty, or property, without due process of law."  "In order to succeed on a due process claim, whether procedural or substantive, [a] plaintiff must identify a valid liberty or property interest."  *Vlahadamis v. Kiernan*, 837 F. Supp. 2d 131, 155 (E.D.N.Y. 2011) *amended*, No. 08 Cv. 2876 (DRH) (AKT), 2011 WL 5156340 (E.D.N.Y. Oct. 28, 2011) (citing *Toussie v. County of Suffolk*, 806 F. Supp. 2d 558, 578-79 (E.D.N.Y. 2011); *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994); *and Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211-12) (requiring a plaintiff to first allege a property interest).  Liberally construed, the Amended Complaint seeks to allege a claim for deprivation of a property interest without due process based on the denial of Plaintiff's membership application to the RGC.

"Property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Safepath Sys. LLC v. New York City Dep't of Educ.*, 563 F. App'x 851, 854 (2d Cir. 2014) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  "Such an interest cannot be

created out of 'an abstract need or desire for it,' nor from a 'unilateral expectation of it'; rather, a plaintiff must 'have a legitimate claim of entitlement to it.'" *Id.* at 854-55.  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).  *See also Soundview Associates v. Town of Riverhead*, 893 F. Supp. 2d 416, 431 (E.D.N.Y. 2012) (citing *RRI Realty Corp. v. Incorp. Vill. of Southampton*, 870 F.2d 911, 917 (2d Cir. 1989)) (In the land use context, finding an entitlement to a benefit "only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit.") (internal quotation marks omitted).

Here, Plaintiff alleges that "should [one] prove residency [in Rye] . . . and pay the membership fee . . . the [RGC has the] obligation . . . to admit all [such applicants]."  (AC ¶ 29.) In other words, Plaintiff argues that admission to the RGC is mandatory.  Nestled within this allegation, which the Court treats as true for purposes of this motion, Plaintiff implicitly admits that the RGC's application process is, at least in part, discretionary.

As Plaintiff correctly notes, in order to gain admission to the RGC, members must "prove residency" in the City of Rye.  (AC ¶ 29; Pl.'s Opp., Ex. O.)[7]  The 2013 Resident Application specifically states:

**Residency Requirements**

> ➤ Residency is defined as residing (legal domicile) solely within the physical boundaries of the City of Rye.  Ownership of real property within the City or a

---

[7] Although the Court has not considered any of Plaintiff's exhibits attached to his opposition papers in connection with the instant motion, the Court may take judicial notice of Plaintiff's May 3, 2013 Resident Application for the RGC as a document relied upon by Plaintiff in drafting the Amended Complaint.  "Where a plaintiff has actual notice of the information contained in extraneous materials and has relied on the documents in drafting the complaint, a court may consider the document on a motion to dismiss."  *Fink v. Time Warner Cable*, No. 08 Cv. 9628 (LTS), 2009 WL 2207920, at *2 (S.D.N.Y. July 23, 2009) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Although the copy of Plaintiff's 2013 application attached to his motion papers appears to have been received from a FOIL request submitted after the filing of the Amended Complaint, it is without question that Plaintiff was aware of and relied on the information contained therein in drafting the Amended Complaint.  (*See* AC ¶ 22 ("Lamont pointed out to Wilson that the application submitted on May 3, 2013 consisted of a Pool for Two Membership."))

mailing address *may not* constitute residency. (emphasis added.)
> (2) Required Documents: current Con Edison bill, cable or satellite TV bill and driver's license *ONLY*.  Additional documents or verification must be presented *if required by management*.  Documents must show applicants[sic] name and current address. (first emphasis in original; second emphasis added.)
> The burden of establishing proof of residency *to the satisfaction of Club Management* shall be upon the applicant. (emphasis added.)

*Id.*  The residency requirements make clear that RGC management determines whether an applicant has provided satisfactory proof of residency.  (*Id.*) ("The burden of establishing proof of residency *to the satisfaction of Club Management* shall be upon the applicant.") (emphasis added.)  Even if an applicant submits the required documents proving residency, RGC management may require the provision of additional documents.  In short, RGC management has the discretion to determine whether the documents provided by an applicant are sufficient to prove residency in the City of Rye, and may deny an application on that basis.

As the RGC has discretion to accept or reject a portion of the membership application, Plaintiff has not alleged the existence of a protected property interest.  Without such an interest, Plaintiff's due process claim fails.

C.      *Monell Liability*

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  It has long been established that a municipality cannot be held vicariously liable under § 1983 unless the "execution of the government's policy or custom . . . inflicts the injury."  *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).  Thus, *Monell* dictates that any § 1983 claim against a municipal entity must be premised on the theory that the municipal actor's allegedly unconstitutional "acts were performed pursuant to a municipal policy or custom."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *see generally Monell*, 436 U.S. at 692-94.

10

Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity.  *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal citation omitted).  First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."  *Id*. (internal citation omitted).  Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

To satisfy the first requirement, a plaintiff must allege the existence of:

(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases).  A plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim, and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, but in the absence of other evidence, a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury."  *Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.

1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112,

123, 125 (1988) (plurality opinion) (explaining that only municipal officials with "final

policymaking authority" concerning particular activities giving rise to plaintiff's claims "may by

their actions subject the government to § 1983 liability") (internal citation omitted). "In the end,

therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was

the moving force behind the alleged injury." *Hayes*, 853 F. Supp. 2d at 439 (quoting *Roe v. City

of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)) (internal quotation marks omitted).

In the context of a motion to dismiss, "a plaintiff must make factual allegations that

support a plausible inference that the constitutional violation took place pursuant either to a

formal course of action officially promulgated by the municipality's governing authority or the

act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*,

351 F. App'x 543, 545 (2d Cir. 2009). *See also Twombly*, 550 U.S. at 555.

Here, Plaintiff fails to offer even boilerplate allegations of the existence of a municipal

policy, practice, or custom. Rather, Plaintiff argues in his opposition to the instant motion that

"[l]iability results from what is known as the doctrine of *respondeat superior*." (Pl.'s Opp. ¶ 32.)

Contrary to Plaintiff's arguments, it is well-settled that municipalities may not be held liable

under § 1983 on a theory of *respondeat superior*. *Patterson*, 375 F.3d at 226. *See also Cucuta v.

New York City*, 25 F. Supp. 3d 400, 418 (S.D.N.Y. 2014). Accordingly, Plaintiff's *Monell* claim

against the City of Rye is dismissed.[8]

---

[8] Having dismissed Plaintiff's § 1983 claims, the Court need not reach the question of whether any of the
Defendants are entitled to qualified immunity.

## II.      Civil RICO Claim

Plaintiff also asserts a RICO claim based on allegations of wire fraud, interference with commerce, extortion, and racketeering.  (AC ¶¶ 45-49.)  In order to state a claim for relief under RICO, "a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal citations and quotation marks omitted).  "Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity' . . . [,]must plead at least two predicate acts . . . and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity."  *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

Plaintiff alleges the following predicate acts: wire fraud in violation of 18 U.S.C. § 1343; interference with interstate commerce in violation of 18 U.S.C. § 1951; extortion in violation of 18 U.S.C. § 1951; and interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952. [9]  (AC ¶¶ 45-49.)  If adequately alleged, these would qualify as predicate acts under RICO.  *See* 18 U.S.C. § 1961(1)(B).  Plaintiff has not, however, sufficiently pleaded such allegations, and his claims will be dismissed.

### A.      *Wire Fraud*

To adequately plead the predicate act of wire fraud, Plaintiff is required to allege: "(1) [a] scheme to defraud, including proof of intent; (2) money or property as [an] object of [the] scheme; [and] (3) use of [the] mails or wires to further the scheme."  *City of New York v.*

---

[9] Plaintiff appears to add the predicate act of mail fraud in violation of 18 U.S.C. § 1341 in his opposition to the instant motion.  (*See* Pl.'s Opp. at 25.)  As Plaintiff did not seek leave to amend the Amended Complaint, the Court will not consider this additional predicate act as a basis for Plaintiff's RICO claim.

*Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 552 (S.D.N.Y. 2005) (citing *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000); *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996)).  Claims of wire fraud are also subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) ("all allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").  "[A]llegations of predicate . . . wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

Plaintiff's allegations of wire fraud consist of the following: (1) that Wilson "manufactured her politically extortive theory of [Plaintiff's] unpaid dues . . . by telephone in violation of" § 1343, (AC ¶ 45); and (2) "[w]hen . . . Wilson caught wind of [Plaintiff's] application, [she] was emboldened, . . . continued her particular brand of witchcraft, . . . [and] advis[ed] Buonaiuto to halt the processing of [Plaintiff's] application, [and] she did so by either telephone or electronic mail in violation of" § 1343.  (*Id.* ¶ 46.)

Plaintiff's allegations are insufficient to satisfy the requirements of Rule 9(b).  Although Plaintiff generally alleges who made the communications, their contents, and where and when they occurred, Plaintiff offers only conclusory allegations as to how or why the statements were fraudulent.  Other than stating that Wilson "manufactured her politically extortive theory of [Plaintiff's] unpaid dues" and "continued her particular brand of witchcraft," Plaintiff completely fails to allege how or why the email and telephone communications were fraudulent.  (*See* AC ¶¶ 45-46.)  Although Plaintiff asks Defendants where "the beef"[10] is in his opposition papers,

---

[10] Plaintiff repeatedly asks for "the beef" in his opposition to the instant motion.  Though the Court notes that it is Plaintiff's burden to set forth sufficient allegations with respect to Plaintiff's wire fraud allegations, this

presumably as a request for Defendants to produce evidence of his unpaid dues, at this stage of the proceedings it is Plaintiff's burden to sufficiently allege why the statements made were fraudulent.  His failure to do so precludes these alleged acts from forming the basis of his RICO claim.  *See Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) (summary order) (dismissing RICO claim where plaintiff alleged dates, locations, senders, and recipients of allegedly fraudulent communications, but did not allege the reason such communications were fraudulent in more than conclusory terms).

> B.      *Interference with Interstate Commerce and Extortion*

Plaintiff's next proposed predicate acts are based on interference with commerce and extortion in violation of the Hobbs Act, 18 U.S.C. § 1951.  The Hobbs Act proscribes the following:

> "Whoever in any way or degree obstructs, delays, or affects commerce[11] or the movement of any article or commodity in commerce, *by robbery or extortion or attempts or conspires so to do*, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned . . . ."

18 U.S.C. § 1951(a) (emphasis added).  Although Plaintiff asserts the predicate act of "interference with commerce" pursuant to § 1951, a violation of the Hobbs Act requires that such interference occur "by robbery or extortion or attempts or conspir[acies] so to do."  *Id.*  As Plaintiff's allegations underlying these two purportedly separate predicate acts are identical, the Court concludes that Plaintiff seeks to allege the single predicate act of extortion pursuant to § 1951.

---

burden applies to each and every one of Plaintiff's claims.  Defendants are not required to provide evidence in support of their motion at this stage of the proceedings.

[11] Commerce is defined in 18 U.S.C. § 1951(b)(3) as "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction" – otherwise known as "interstate commerce."

Extortion is defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).   "[T]he element of fear may be satisfied by a showing that the victim was placed in fear of economic harm." *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 809 (E.D.N.Y. 2003) (citing *United States v. Capo,* 817 F.2d 947, 951 (2d Cir. 1987)).   "The victim must have reasonably believed: 'first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment.'"   *Id.*   Further, Plaintiff must allege some interference with interstate commerce.   "If the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act."   *Jund v. Town of Hempstead*, 941 F.2d 1271, 1285 (2d Cir. 1991) (internal citations omitted).

Here, Plaintiff fails to allege that Defendants obtained any property from him, with or without his consent, or that Defendants induced Plaintiff to provide that property by wrongful use of force or threats of force, violence, fear, or under color of official right.   Plaintiff merely alleges in conclusory fashion that Defendants failed to activate his fully paid membership and extorted him by "forcing him to pay members[sic] dues for 2013 (no evidence) and member dues for 2014."   (Pl.'s Opp. ¶ 83.)   Even if Plaintiff had sufficiently alleged the taking of his property by force or otherwise, or had intended to proceed on his "interference with commerce" predicate act by some other means – for example, robbery rather than extortion – Plaintiff has not alleged any interference with interstate commerce.   The Amended Complaint is devoid of allegations of "slight, subtle or even potential" interference with or effect upon interstate commerce.   *Jund*, 941

F.2d at 1285.  Like his wire fraud claim, Plaintiff's failure to sufficiently allege the elements of this predicate act precludes it from forming the basis of his RICO claim.

C.        *Interstate Travel or Transportation in Aid of Racketeering Enterprise*

Plaintiff's final proposed predicate act is based on alleged violations of the Travel Act, 18 U.S.C. § 1952.  The Travel Act is violated when: (1) an individual travels in interstate or foreign commerce, or uses the mails; (2) with the intent to commit one of the crimes enumerated in the statute; [12] and (3) then performs an additional act in furtherance of the unlawful activity.  18 U.S.C. § 1952(a).

Here, Plaintiff once again alleges that Defendants failed to activate his fully paid membership, this time in violation of § 1952.  (AC ¶ 49.)  Notwithstanding the fact that RICO requires each predicate act to have its own independent source of conduct, *see Reich v. Lopez*, 38 F. Supp. 3d 436, 446 (S.D.N.Y. 2014) *reconsideration denied*, No. 13 Cv. 5307 (JPO), 2015 WL 1632332 (S.D.N.Y. Apr. 13, 2015), Plaintiff's allegations do not allege a Travel Act violation. Plaintiff has not alleged any travel in interstate commerce, nor has he alleged an intent on the part of the Defendants to commit any of the underlying crimes identified in the statute. Plaintiff's failure is not surprising in light of his inability to sufficiently allege the predicate acts of wire fraud and extortion, as discussed above.  *See FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) (dismissing Travel Act claim because factual underpinnings mirrored proposed predicate acts of wire fraud and extortion that were already dismissed).

---

[12] The underlying crimes include the intent to:

(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity. *See* 18 U.S.C. § 1952.

Accordingly, Plaintiff's RICO claim is dismissed for failure to allege a required predicate act.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Court respectfully directs the Clerk to remove the Committee for Election Equality and Plaintiff's minor son from the caption, terminate the motion at ECF No. 50, enter judgment in favor of Defendants, and close this case.

Dated:   August 20, 2015
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

18